IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
JUN 2 0 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
JUN 2 0 2002

MICHELE SHAFER, )
)
Plaintiff, )
)
v. ) Case No.: CV-02-PT-1029-M
)
MARSHALL COUNTY DEPARTMENT )
OF HUMAN RESOURCES; THE CITY )
OF GUNTERSVILLE, ALABAMA )
POLICE DEPARTMENT, )
)
Defendants. )

## MEMORANDUM OPINION

This causes comes to be heard on defendant Marshall County Department of Human Resources' ("DHR") Motion to Dismiss, for Judgment on the Pleadings, or in the Alternative, for Full or Partial Summary Judgment filed on May 13, 2002.

### FACTS[1]

Plaintiff Michele Shafer ("Shafer") is an adult citizen of Marshall County, Alabama. She is the natural mother of Justin Frances, Cody Howard, and Danielle Shafer, minor children under the age of 19 years. Shafer was awarded sole and exclusive custody over her children by virtue of a State of Florida divorce decree.

Defendant DHR is a state agency pursuant to Alabama Code §§ 38-2-6 and -8 (1975). The Marshall County DHR is a branch office of the State of Alabama Department of Human Resources located in Guntersville, Alabama.

On January 3, 2002, DHR received a report concerning Shafer's care of her minor

---

[1] For purposes of this Memorandum Opinion, the facts submitted by the plaintiff in the complaint will be deemed true and correct.

children. The documented report reads as follows:

> They have been staying at the Holiday Inn for the last couple of weeks. The children have been running around with no shoes or coats on. They have been running around the hotel unsupervised. The hotel staff have had a hard time finding Mrs. Shafer. When they have talked to her, she has smelled of alcohol. One day Danielle was really sick and running around the hotel half naked. A staff member, Debbie Childers, saw her urinating on the floor.

Subsequent to this activity, Shafer established a residence in Guntersville, Alabama. The three minor children resided with her at this residence.

Shafer's former husband, Aaron Holland ("Holland"), had abused Shafer on numerous occasions. Shafer sought and received a valid Protection from Abuse Order against Holland. The order prohibited Holland from entering Shafer's premises or having any contact with her. Holland violated the order by entering her premises. Shafer made numerous phone calls to 911 and the Guntersville Police Department after obtaining the Protection from Abuse Order on December 27, 2001.

On February 18, 2002, DHR was contacted by defendant Guntersville Police Department concerning activity on Shafer's premises. DHR was informed that Holland was seen back at Shafer's residence. DHR went out to Shafer's residence and advised her that unless she agreed to permit the children to be placed with her neighbor, DHR would remove the children from her and place them in foster care. Shafer placed the minor children in her neighbor's care on February 19, 2002.

After a few days had passed, Shafer attempted to regain custody of her children from the neighbor. She advised the neighbor that she no longer consented for them to be there. DHR informed Shafer that they would remove the children if they did not remain in the neighbor's custody. No child-protective proceedings had been filed by DHR at this point.

2

Shafer sought the assistance of legal counsel to resolve this conflict. Counsel for Shafer filed a Motion for Pick Up Order with the Marshall County Circuit Court on March 26, 2002. Apparently, DHR completed its investigation on the same day. Shafer, at the instruction over her legal counsel, returned to her neighbor and demanded custody of the children. The neighbor called DHR who removed the children from plaintiff's custody on March 26, 2002.

On March 28, 2002, DHR filed three dependency petitions on behalf of the minor children. The petitions stated the following grounds for the agency's belief that the children were dependent and in need of the State's protection:

> The said child . . . Dependent . . . in that: On 02-19-02, Ms. Shafer placed her children with a neighbor, Ms. Benefield due to her admission of crystal meth use and Mr. Arron Holland's continued return to her home despite a protective order. Ms. Shafer submitted a positive drug screen for crystal meth on 02-25-02. There have been numerous instances of domestic violence in the home between Ms. Shafer and Mr. Holland while the children were present. Ms. Shafer has received two black eyes and a broken nose in altercations with Mr. Holland. According to police reports and Ms. Benefield, officers have been to Ms. Shafer's residence at least 30 times. Mr. Holland has also been arrested on several occasions for violation of the protection order, but Ms. Shafer continues to allow him to return to her home. Mr. Holland has previously been arrested for harassment, assault, domestic violence, and violation of a protective order. On 03-22-02 Ms. Shafer and Mr. Holland were both arrested. Mr. Holland is a convicted felon and was in possession of a firearm. Ms. Shafer was arrested for disorderly conduct. The electricity at her home has been turned off since 03-15-02. Ms. Shafer has not attempted to visit the children since 03-15-02, and prior to this, she and Mr. Holland were in Florida for approximately two weeks. . . .

After the petitions were filed, the Marshall County Circuit Judge advised counsel for Shafer that he would defer to the Juvenile Court's consideration of the dependency petitions and would not rule on the Motion to Pick Up Order.

A "72 hour hearing" was held before the Marshall County Juvenile Court. On March 29, 2002, Marshall County District Judge Howard Hawk entered a Shelter Care Hearing Order in all three cases. Judge Hawk's order placed custody of the children with DHR. The children's

parents were to have supervised visitation.

On April 8, 2002, Shafer filed a Motion to Reconsider and Motion for Immediate Relief. The grounds for this motions were that DHR continued to take the minor children to Shafer's neighbor's house for visitation, and that it allowed Holland to visit the children. DHR responded to these motions by agreeing to not allow further visits with Deborah Benefield and admitting that Holland received one supervised visit. The Marshall County Juvenile Court denied Shafer's motions. The three dependency cases are still pending in the Juvenile Court of Marshall County, Alabama.

On April 25, 2002, Shafer filed a civil action in this court against DHR and the Police Department of the City of Guntersville. In Count I, Shafer petitions for a writ of mandamus directing the defendants to issue an order restoring Shafer with the sole and exclusive custody of her minor children. In Count II, Shafer alleges that the defendants have violated her First Amendment right to privacy and/or right of intimate association. In Count III, Shafer alleges that the defendants violated her Fifth and Fourteenth Amendment rights to equal protection of the laws. In Count IV, Shafer alleges that the defendants have conspired to interfere with her right to custody of her children.

## ARGUMENTS

DHR makes four primary arguments in support of its Motion to Dismiss, or in the alternative, Motion for Full or Partial Summary Judgment. First, it argues that it is immune from suit by virtue of the Eleventh Amendment and the doctrine of Sovereign Immunity. According to DHR, the Eleventh Amendment, as interpreted by the federal courts, provides that "an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Employees v. Missouri Pub. Health and Welfare Dep't*, 411 U.S.

4

279 (1973). It notes that the Eleventh Amendment bars not only suits for monetary relief for equitable restriction against a state but also suits seeking injunctive relief. *See Alabama v. Pugh*, 438 U.S. 781 (1978). According to DHR, it is a state agency pursuant to Alabama Code §§ 38-2-6 and -8 (1975). Since it is a state government agency, it concludes that it is absolutely immune from suit. *Relying on Phillips v. Thomas*, 555 So. 2d 81 (Ala. 1989).

Second, DHR argues that this court should not exercise jurisdiction over Shafer's complaint because the *Younger* abstention doctrine is applicable. *See Younger v. Harris*, 401 U.S. 37 (1971). According to DHR, the *Younger* doctrine states that a federal court must not intervene either by injunction or declaratory judgment in a pending state criminal proceeding in the absence of extraordinary circumstances. *See Younger*, 401 U.S. at 37. It notes that the Supreme Court has not limited the *Younger* doctrine to state criminal proceedings and that the principle of *Younger* may be applicable to non-criminal proceedings. *Relying on Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423 (1982). Furthermore, it asserts that the Supreme Court has held that a federal court should not exert jurisdiction in a case if the plaintiff had an opportunity to present his constitutional claims in the pending state court proceeding. *See Moore v. Sims*, 442 U.S. 415 (1979). Additionally, it points out that the abstention doctrine precludes a federal court from reviewing a juvenile courts grant of temporary custody of a child to a state child welfare agency. *See Brunken v. Lance*, 807 F.2d 1325 (7th Cir. 1986) (applying *Younger* and holding that federal trial court should have allowed state proceeding to run its course and that the father made no showing that he could not have argued his constitutional claims in state court). DHR points out that the Marshall County Juvenile Court still has jurisdiction over the children. It states that Shafer had and continues to have an opportunity to present her federal claims to the state court. Therefore, it requests that this court

5

abstain from ruling on the present claims pursuant to the mandates of the *Younger* doctrine.

Third, DHR argues that Shafer is precluded by the doctrines of res judicata and collateral estoppel from re-litigating the issues relating to the state-court custody proceedings. According to DHR, the Supreme Court has held that 28 U.S.C. § 1738 requires state court judgments to be given both collateral estoppel and res judicata effect in subsequent actions under 42 U.S.C. § 1983. *See Allen v. McCurry*, 449 U.S. 90 (1980); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984). It asserts that the Eleventh Circuit has held that, where state and federal courts have concurrent jurisdiction, litigants in state court are barred from later pursuing a federal cause of action arising from the same transactions in federal court even where the parties could have, but did not, assert the federal claim in state court. *See Lane v. Cent. Bank*, 754 F.2d 814 (1985). Since Shafer has full opportunity to raise her claims in the pending state court proceedings, DHR concludes that she should not be able to re-litigate her claims in federal court.

Finally, DHR argues that Shafer's complaint is due to be dismissed because she has failed to state a claim or cause of action upon which relief can be granted under 42 U.S.C. § 1983. It asserts that the two elements that must be alleged to state a claim under 42 U.S.C. § 1983 are (1) whether the conduct complained of was committed by a person acting under the color of state law and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or the laws of the United States. *See Parratt v. Taylor*, 521 U.S. 527 (1981). DHR contends that Shafer has failed to state what specific federal rights may have been violated. It notes that the basis for her claims are that the "Defendants have violated her right to protection under the First Amendment to privacy and the right to intimate familial association." It claims that this allegation does not state a cause of action. Furthermore, it concludes that none of her claims are stated with sufficient particularity to withstand a

6

challenge on a motion to dismiss.

In response, Shafer argues that she has stated a valid claim for a violation of her First Amendment right to "intimate association." She contends that the Supreme Court has provided special protection to two different forms of association: "intimate association" and "expressive association." *McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir. 1994). According to Shafer, at a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of family. *Relying on Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-20 (1984). She claims that her constitutional right to the intimate association with her children has been violated by DHR's interference. Specifically, she asserts that DHR compelled her to place her children in the custody of her neighbor on the grounds that she could not keep Holland away from her residence. Furthermore, she states that DHR compelled her to submit to a urine drug test without authorization from any court of competent jurisdiction. Based on these illegal acts, Shafer claims that DHR procured the order from the Juvenile Court placing custody of the minor children with DHR. Shafer concludes by stating that DHR's actions involve the heart of familial association and invoke the First Amendment right to intimate association. *See Sutton v. Village of Valley Stream*, 96 F. Supp. 2d 189 (E.D.N.Y. 2000).[2]

Additionally, Shafer argues that she has alleged a valid equal protection claim pursuant her constitutional rights provided by the Fifth and Fourteenth Amendments. Relying primarily on *Village of Willowbrook v. Olech*, 120 S. Ct. 1073 (2000), Shafer contends that she has alleged

---

[2] Akins cites the following cases for additional authority regarding the right of familial (or intimate) association: *Adkins v. Bd. of Educ.*, 982 F.2d 952 (6th Cir. 1993) (holding that school superintendent violated the constitutional right of intimate association by firing a school secretary because her husband, a school principal, refused to obey the superintendent's directive to give bad evaluations to certain teachers); *Newborn v. Morrison*, 440 F. Supp. 623 (S.D. Ill. 1977) (holding that is was a violation of marital association rights to not renew a teacher's contract because of animosity toward her husband, who was a teacher's union official).

a valid "class of one" equal protection claim. According to Shafer, she need only allege "that she has been intentionally treated differently from other similarly situated and that there is no rational basis for the difference in treatment." She contends that she has demonstrated the "illegitimate animus" of DHR toward herself. She claims that no rational basis for the differential treatment exists. Shafer asserts that DHR took its illegal actions after she attempted to regain custody of her children from her neighbor and filed the Motion for Pick Up Order. She claims that DHR has treated her differently from other parents who had custody of their children. Thus, regardless of the intent and purpose of DHR, Shafer concludes that she was denied equal protection of the law and suffered the loss of her children.

Finally, Shafer argues that the termination of parental rights is a drastic measure, and the courts gravely consider such actions. *See Ex parte Beasley*, 564 So. 2d 950 (Ala. 1990). She states that a natural parent's right to the custody of his or her child is outweighed only by clear and convincing evidence indicating that a termination of parental rights is in the best interest of the child. *See K.A.C. v. Jefferson Co. Dep't of Human Resources*, 744 So. 2d 938 (Ala. Civ. App. 1999). Shafer concludes that DHR has not presented clear and convincing evidence to support the removal of her children.

## MOTION TO DISMISS STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). Usually, a complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that will entitle him to

relief. *In re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996).

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## CONCLUSIONS OF THE COURT

The court concludes for one or more reasons asserted by the defendant Marshall County Department of Human Resources, its Motion to Dismiss, for Judgment on the Pleadings, or in the Alternative, for Full or Partial Summary Judgment filed on May 13, 2002, is due to be granted.

This _20th_ day of June 2002.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE